UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

|   |   |   |
|---|---|---|
| *In re*: RESIDENTIAL CAPITAL, LLC, *et al.*, | : | 15cv6738 |
|  | : |  |
|  | : | OPINION & ORDER |
| Debtors. | : |  |
| TODD SILBER, | : |  |
| Appellant, | : |  |
| v. | : |  |
| RESCAP BORROWER CLAIMS TRUST, | : |  |
| Appellee. | : |  |

------------------------------------------------------------

WILLIAM H. PAULEY III, District Judge:

Todd Silber appeals pro se from an order of Bankruptcy Judge Martin Glenn dated August 4, 2015, disallowing his claim against GMAC Mortgage, LLC ("GMACM"). See In re Residential Capital, LLC, No. 12-12020 (MG), 2015 WL 4747710 (Bankr. S.D.N.Y. Aug. 4, 2015) (the "Order").  The gravamen of Silber's claim is that GMACM, his mortgage servicer, failed to properly review his loan modification applications.  Following a two-day evidentiary hearing (the "Hearing"), Judge Glenn sustained the objections of the ResCap Borrower Claims Trust (the "Trust") and determined that Silber did not have a legally cognizable claim.

The evidence revealed that Silber was "extremely diligent in submitting several workout packages, providing supplemental documentation supporting those workout packages, and following up via telephone to ensure that his applications were complete and adequately

reviewed." Order, 2015 WL 4747710, at *1. The evidence also revealed that GMACM failed to abide by its own protocols and, at times, misinformed Silber and state agencies inquiring on his behalf. Nevertheless, this Court cannot conclude that the Bankruptcy Court's findings of fact were clearly erroneous or that its conclusions of law were incorrect. Accordingly, the Order is affirmed.

## BACKGROUND

I. Silber's Mortgage Loan

In November 2008, Silber borrowed $236,823 from Norcom Mortgage to purchase a home. Norcom's interest in the mortgage was eventually transferred to GMACM, which serviced the loan until February 2013.

Because the Federal Housing Administration ("FHA") insured Silber's mortgage, it was subject to the FHA's Home Affordable Modification Program ("HAMP"). HAMP permits borrowers to modify their loans under certain circumstances. To qualify for a FHA HAMP modification, a borrower's front-end debt-to-income ("DTI") ratio (the borrower's total monthly mortgage payment for the modified mortgage divided by the borrower's gross monthly income) must be less than 31 percent. And the borrower's back-end DTI ratio (the total monthly mortgage payment plus all recurring monthly debt divided by the borrower's gross monthly income) must not exceed 55 percent. When reviewing a borrower's loan modification application, servicers must consider a borrower's unemployment income and rental income as monthly gross income. To factor unemployment income into monthly gross-income calculations, a borrower must provide reasonable assurance that unemployment income will continue for at least one year.

II.  Workout Packages

In November and December 2009, Silber failed to make his mortgage payments. From the end of 2009 through the first quarter of 2012, Silber submitted numerous mitigation applications (or "workout packages") to GMACM, and made other efforts to negotiate a new mortgage repayment plan. Those efforts are summarized below.

A. December 2009 Workout Package

Silber submitted his first workout package in December 2009. Among other things, it included a letter from Silber indicating that he was entitled to twenty more weeks of unemployment income and that he intended to apply for additional benefits. GMACM's servicing notes indicate that the workout package was missing signed income tax returns and appropriate unemployment income documentation. However, GMACM informed Silber of only one deficiency—the missing income tax return—which he rectified promptly.

On January 13, 2010, GMACM advised Silber by letter that his December 2009 Workout Package was denied because there was "insufficient income to support" his request for a "FHA Loan Modification." (H'rg Exs. 27, H.)  GMACM followed up in April 2010 with a more detailed explanation that Silber did not qualify for a non-FHA loan modification because he was only receiving unemployment income, and that he was ineligible for a FHA HAMP loan modification because his back-end DTI ratio of 73% exceeded FHA HAMP's 55% limit.

B. January 2010 Workout Package

Meanwhile, Silber submitted a second workout package on January 29, 2010 that included a printed statement of unemployment benefits showing that he would receive benefits

for fifteen weeks, and a letter from Silber himself asserting that he qualified for a one-year extension of benefits. GMACM's servicing notes indicate that the unemployment-income documentation did not confirm a benefits end date. On February 8 and 9, 2010, GMACM informed Silber by phone of this purported deficiency. On February 15, 2010, Silber responded with a document from the Massachusetts Division of Unemployment that included the ambiguous entry "BYE 10-16-10" (H'rg Ex. J) which Silber contends demonstrated an end date of October 16, 2010. Nevertheless, GMACM denied Silber's loan modification request, informing Silber that there was "insufficient income to support" the requested loan modification. In subsequent communication, GMACM informed Silber that it "did not receive the unemployment benefits statement showing the benefits would continue for 9 months more." (H'rg Exs. 24, G.) However, that nine-month requirement only applied to non-FHA HAMP modifications. FHA HAMP has a more stringent requirement that applicants demonstrate benefits will continue for one year. The record is bereft of any evidence that the January 2010 application was reviewed under FHA HAMP guidelines.

   C. March 2010 Loss Mitigation Reviews

On March 8, 2010, Silber informed GMACM that he received a seventeen-week extension of unemployment benefits, which would be followed by an additional twenty-week extension. One week later, GMACM denied Silber's application, finding that even when it applied his unemployment income, his back-end DTI ratio of 65% exceeded FHA HAMP's 55% limit.

   D. April 2010 Workout Package

Undeterred, Silber submitted a new workout package in April 2010 because he

had procured a tenant who would pay him $500 per month.  The package did not include any unemployment documentation.  While reviewing the application, GMACM informed Silber that his unemployment income could not be used because his benefits were scheduled to end in October 2010.  GMACM also erroneously informed Silber that only 75% of his rental income could be considered in the loan modification review.

GMACM denied Silber's April 2010 application.  By letter dated April 12, GMACM informed Silber that his request for a "FHA Loan Modification" was denied due to "insufficient income to support" the requested modification.  (H'rg Exs. 27, H.)  An April 30 follow-up letter clarified that the latest workout package was denied "based on [rental] income of $375 (500 x 75%)" which was insufficient "to approve a traditional modification or a modification through the FHA HAMP."  (H'rg Exs. 24, G.)  Notably, under FHA HAMP guidelines, GMACM should have utilized all of Silber's rental income in its calculations, not 75%.[1]

E. Forbearance Plan

Although GMACM's April 30, 2010 letter denied Silber's request for a FHA HAMP loan modification, it offered Silber a six-month "forbearance plan" from June 1 through November 1, 2010 that would temporarily reduce Silber's monthly mortgage payments by 50% in order to "allow time for the new HAMP guidelines to be implemented" and for Silber "to increase [his] income or decrease [his] expenses or to transition to another home if the needs [arose]."  (H'rg Exs. 24, G at 2–3.)  Silber agreed to the Forbearance Plan and made his monthly

---

[1] At the Hearing, testimony was proffered "that even if GMACM made its calculations with the full $500 in monthly rental income, Silber's income would still be insufficient to support the approval of a FHA HAMP loan modification."  Order, 2015 WL 4747710, at *7

payments during that six-month period.

### F. December 2010 AAG Email

On December 7, 2010, a Connecticut Assistant Attorney General ("AAG") informed GMACM via email that Silber had lodged a complaint regarding GMACM's failure to help him pursue a loan modification (the "AAG Email"). The next day, GMACM responded that "[d]ue to guideline changes, unemployment income cannot be utilized when reviewing an account for a loan modification." (H'rg Ex. 6.) GMACM's representation was false.

### G. January 2011 Workout Package

On January 3, 2011, Silber submitted a new workout package, noting that another individual would contribute $600 per month to help satisfy his mortgage obligation. With respect to unemployment benefits, that package only included a website printout describing an unemployment benefit program, along with bank statements showing that Silver was receiving benefits. GMACM's servicing notes indicate that the package lacked sufficient verification of the $600 contribution income. After reviewing the latest workout package for both a non-FHA traditional loan modification and a FHA HAMP modification, GMACM advised Silber that it was denying him a modification under "HAMP . . . due to insufficient income." (H'rg Ex. 31, 0 at 2.)

### H. EHLP

On August 22, 2011 Connecticut notified GMACM of Silber's potential eligibility for the Connecticut Housing Finance Authority's ("CHFA's") Emergency Homeowners' Loan Program ("EHLP"), a program designed to assist eligible homeowners with "mortgage arrearages, delinquent taxes, homeowners insurance, condominium fees and

foreclosure related legal fees as well as assist with monthly mortgage payments for up to 24 months or $50,000 whichever comes first." (H'rg Ex. P.)

On August 25, 2011, GMACM provided CHFA with a $43,736.80 quote, representing the amount needed to reinstate Silber's loan and qualify for the EHLP (the "Reinstatement Quote"). The Reinstatement Quote incorporated 20 past-due payments of $1,990.80, the payment due for September 1, 2011 ($1,990.80),[2] inspection fees of $112.50, advances of $1,577.30, outstanding foreclosure advances of $1,991, and a $1,750.80 deduction for an unapplied credit. On September 22, 2011, Silber's EHLP application was denied because "[t]he maximum loan amount available [wa]s insufficient to reinstate the current mortgage and provide the monthly assistance required for a minimum of six months. [Silber]'s . . . aggregate household income [wa]s insufficient to cover the housing expense after reinstatement." (H'rg Ex. 18 at 1–2.)

   I.   March 2012 Workout Package

On March 9, 2012 Silber submitted another workout package. That workout package was reviewed for a non-FHA modification as well as a FHA HAMP loan modification. Nevertheless, GMACM determined that Silber was ineligible for a non-FHA modification due to insufficient income, and ineligible for FHA HAMP loan modification because he had been delinquent on his mortgage for 28 months.

III.   The Hearing and Order

The Bankruptcy Court conducted a two-day evidentiary hearing to address

---

[2] Over Silber's objection, the Bankruptcy Court found that GMACM properly included the not-yet-due September 1 payment because "[t]he CHFA Eligibility Letter clarifies that the Reinstatement Quote from GMACM was good through September 25, 2011." Order, 2015 WL 4747710, at *8.

Silber's claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) negligent misrepresentation, and (4) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). The parties presented documentary evidence, as well as the testimony of two witnesses: Silber and David Cunningham, the Trust's Director of Regulatory Compliance. After the evidence was presented, the Bankruptcy Court decided, over Silber's objections, that it did not need to hear closing arguments. In the Order, the Bankruptcy Court addressed each of Silber's causes of action as follows.

   A. Breach of Contract

"In Connecticut, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." Slainte Investments Ltd. P'ship v. Jeffrey, 142 F. Supp. 3d 239, 249 (D. Conn. 2015) (internal quotation marks omitted). The Bankruptcy Court found that GMACM breached its contract "by failing to review some of Silber's workout packages using the FHA HAMP Guidelines." Order, 2015 WL 4747710, at *11 (citing the January 2010 and March 2010 reviews as examples). Additionally, in violation of FHA HAMP guidelines, GMACM only considered 75% of Silber's rental income in calculating his gross monthly income and erroneously told Silber that he needed to submit documentation showing unemployment for 9 months instead of 12. Order, 2015 WL 4747710, at *11.

Nevertheless, the Bankruptcy Court found that Silber failed to establish damages because he "failed to produce evidence demonstrating that he would have qualified for a FHA HAMP loan modification under FHA HAMP Guidelines," noting that "[f]or each workout package submitted, the documentary evidence and testimony established that the documentation

8

of unemployment income and/or rental income, whether taken together or separately, would not have been sufficient to obtain approval of a FHA HAMP loan modification under FHA HAMP Guidelines." Order, 2015 WL 4747710, at *11; see also Order, 2015 WL 4747710, at *11 n.8 ("Since Silber could not provide evidence demonstrating that he would have qualified for a Non-FHA HAMP loan modification, which has less stringent standards than the FHA Hamp Guidelines, the Court is not persuaded that Silber should have been entitled to a variance to obtain a FHA HAMP load modification.").

Additionally, to the extent Silber also "assert[ed] that GMACM committed a breach of contract by submitting an inflated Reinstatement Quote to the CHFA," the Bankruptcy Court found no breach of contract because: (1) "Silber has not pointed to a single provision in the parties' Loan contract that GMACM breached by providing a purportedly inflated Reinstatement Quote to a third-party," and (2) the Reinstatement Quote was not materially inaccurate. Order, 2015 WL 4747710, at *12.

B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Connecticut law, "[a]n action for breach of the covenant of good faith and fair dealing requires proof of three essential elements: first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith." Fracasse v. People's United Bank, 747 F.3d 141, 144 n.1 (2d Cir. 2014) (citation omitted). "[T]he acts by which a defendant allegedly impedes the plaintiff's

right to receive [contractual] benefits . . . must have been taken in bad faith[, which] requires fraud, a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation . . . by some interested or sinister motive." Richards v. Direct Energy Servs., LLC, 120 F. Supp. 3d 148, 163 (D. Conn. 2015) (internal citations and quotation marks omitted).

The Bankruptcy Court found that Silber failed to demonstrate a breach of the implied covenant for two reasons.  First, for essentially the same reasons that it found that Silber failed to show damages under his breach of contract claim, the Bankruptcy Court found that Silber did not demonstrate that GMACM injured his right to receive some or all of the benefits of his contract.  See Order, 2015 WL 4747710, at *12 ("Since Silber would have been denied a FHA HAMP loan modification based on the workout packages he submitted, whether the packages were reviewed under FHA or Non-FHA Guidelines, Silber cannot satisfy this element of a breach of implied covenant claim.")   Second, the Bankruptcy Court found that there was no evidence that GMACM acted in bad faith, noting that "the Non-FHA HAMP Guidelines [erroneously used by GMACM to evaluate Silber's workout packages] were more favorable to borrowers such as Silber, but he still did not qualify."  Order, 2015 WL 4747710, at *12.

C.  Negligent Misrepresentation

"To establish liability for negligent misrepresentation, a plaintiff must be able to demonstrate by a preponderance of the evidence: (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." Stuart v. Freiberg, 316 Conn. 809, 821–22 (2015) (quotation marks omitted).  The Bankruptcy Court

found that Silber's negligent misrepresentation claims were premised on two different statements by GMACM: (1) the December 2010 email incorrectly informing the Connecticut AAG that "[d]ue to guidelines changes, unemployment income cannot be utilized when reviewing an account for a loan modification"; and (2) the purportedly inaccurate $43,736.80 Reinstatement provided to the CHFA.

With respect to the AAG Email, the Bankruptcy Court found that there was no evidence that Silber himself actually relied on that misrepresentation. Specifically, Silber acknowledged that "[he]'d been aware that unemployment could be used the whole time." Order, 2015 WL 4747710, at *13. If anyone, the AAG—not Silber—may have relied on such a statement. But that would not give rise to a negligent misrepresentation claim with respect to Silber. Order, 2015 WL 4747710, at *13. With respect to the August 2011 Reinstatement Quote the Bankruptcy Court found, among other things, that there was no misrepresentation at all:

> Silber has not put forth any evidence demonstrating that the payoff amount he received in August 2011 was inaccurate or false. The Court has already concluded that the Reinstatement Quote was an accurate figure. The real issue is Silber's erroneous conflation of the payoff amount to the Reinstatement Quote. At the Evidentiary Hearing, it was made clear that a payoff amount is different from a reinstatement quote; that the two figures were different in amount does not mean that Silber was provided an inaccurate payoff amount.

Order, 2015 WL 4747710, at *13. The Bankruptcy Court also found no evidence that Silber relied on the Restatement Quote provided to the CHFA. Order, 2015 WL 4747710, at *13.

D. CUTPA

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). In

11

evaluating whether conduct violates CUTPA, courts must determine:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise—whether, in other words, it is in at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

Martin, Lucas & Chioffi, LLP v. Bank of Am., N.A., 714 F. Supp. 2d 303, 316 (D. Conn. 2010) (citation omitted). The Bankruptcy Court found that Silber's CUTPA claim failed both because the underlying claims failed, and because "Silber has not established that GMACM has engaged in conduct that would constitute a [CUTPA] violation." Order, 2015 WL 4747710, at *14.

## LEGAL STANDARD

This Court has jurisdiction to hear appeals from final bankruptcy court orders pursuant to 28 U.S.C. § 158(a)(1). "[T]he district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. A district court "may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below." Freeman v. Journal Register Co., 452 B.R. 367, 369 (S.D.N.Y. 2010). However, district courts generally may not consider issues and arguments that were not raised before the Bankruptcy Court. See In re Barquet Grp., Inc., 486 B.R. 68, 73 n.3 (S.D.N.Y. 2012).

The Bankruptcy Court's findings of fact are reviewed for clear error, and its conclusions of law de novo. See In re Manville Forest Prods. Corp., 896 F.2d 1384, 1388 (2d Cir. 1990). Under the clearly erroneous standard, findings of fact that are supported by evidence may be reversed only if "the reviewing court on the entire evidence is left with the definite and

firm conviction that a mistake has been committed." In re Grant Assocs., 154 B.R. 836, 840 (S.D.N.Y.1993) (quoting Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)).

Additionally, because Silber is proceeding pro se, his submissions must be construed liberally and interpreted "to raise the strongest arguments that they suggest." Harris v. City of NY, 607 F.3d 18, 24 (2d Cir. 2010).  However, this Court "need not accept as true [Appellant's] conclusions of law or unwarranted deductions of fact." Shamilov v. Human Res. Admin., No. 10-cv-8745 (PKC), 2011 WL 6085550, at *4 (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (internal quotation marks omitted)).

## DISCUSSION

Silber's appeal raises the following issues: (1) whether Silber was denied due process when the Bankruptcy Court precluded him from making a closing argument; (2) whether the Bankruptcy Court erred in relying on the Trust's witness; (3) whether the Bankruptcy Court's findings regarding damages were clearly erroneous; (4) whether Silber proved a CUTPA violation; (5) whether the Bankruptcy Court's findings regarding the Reinstatement Quote were clearly erroneous; and (6) whether Silber proved a negligent misrepresentation claim.

### I.  Due Process

Silber argues that the Bankruptcy Court violated his due process rights by denying his request to make a closing argument.  However, courts have consistently held that "[d]enying closing arguments in a civil bench trial is within a . . . court's discretion." Thomas v. New York Life Ins. Co., 161 F.3d 8 (5th Cir. 1998); see also Matter of Generes, 69 F.3d 821, 825 (7th Cir. 1995) (rejecting argument that a bankruptcy court violated a party's constitutional right by not permitted that party to make a closing argument after an evidentiary hearing);

Duncan v. Hartford Life & Acc. Ins. Co., No. 2:11-cv-01536 (GEB), 2013 WL 506465, at *1 (E.D. Cal. Feb. 8, 2013) (determining "that argument was unnecessary" for a civil bench trial"). And while it may be preferable to afford pro se litigants the opportunity to summarize their arguments after a hearing, it is worth noting that Silber gave lengthy narrative responses to questions from the Bankruptcy Court that summarized much of his case. (July 15, 2016 H'rg Tr. at 71:23–77:15.) Thus, the Bankruptcy Court did not abuse its discretion by declining Silber's request for closing arguments.

II.  Credibility Determinations

Silber asserts that Cunningham's testimony was not credible. Specifically, he notes that Cunningham's testimony at times contradicted documents in evidence and at other times indicated that Cunningham lacked relevant information. But the Bankruptcy Court's findings regarding witness credibility are owed particularly strong deference in view of the judge's opportunity to make those assessments in person. See In re Pisculli, 426 B.R. 52, 59 (E.D.N.Y. 2010) (collecting authorities). Indeed, the Supreme Court has found that even where the record arguably reflected that a witness's testimony "was inconsistent with his own testimony on recall, inconsistent with [other] testimony . . . , and inconsistent with documentary evidence," an appellate court did not err in accepting such testimony as probative in view of the "due regard for the trial court's opportunity to assess the credibility of witnesses." Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123 n.18 (1969). Against that standard, Silber fails to demonstrate that the Bankruptcy Court's findings of fact should be rejected on the ground that Cunningham was not credible.

III.   Damages

The Bankruptcy Court rejected Silber's breach of contract and breach of the implied covenant causes of action largely because Silber failed to establish damages during the Hearing.  On appeal, Silber's arguments reiterate the uncontested fact that GMACM breached its contract with Silber by failing to properly review some of his workout packages.  Silber also takes issue with a number of other findings of the Bankruptcy Court.  For example, with respect to the January 2010 Workout Package, Silber argues that the evidence clarified that his benefits would run from October 24, 2009 through October 16, 2010, thereby contravening the Bankruptcy Court's finding that his unemployment income documentation did not "demonstrate that Silber would receive benefits for 12 months under the FHA HAMP Guidelines."  Order, 2015 WL 4747710, at *5.  However, the time period proffered by Silber falls short of the one-year minimum.  Additionally, the FHA HAMP Guidelines require "[s]ervicers to determine that the income will <u>continue</u> for at least 12 months."  (FHA Hamp Guidelines at 12) (emphasis added).  Thus, the Bankruptcy Court correctly interpreted the FHA HAMP guidelines as permitting servicers to measure unemployment benefits from the date a workout package is received, as opposed to the date the applicant started receiving the benefits.

Critically, Silber does not point to any evidence contravening the Bankruptcy Court's findings with respect to damages—indeed, he tacitly acknowledges that those findings were justified.  (<u>See</u> Br. at 15 ("Ultimately, we do not know what Silber's new payment would have been as there is no record."); Br. at 20 ("When asked by his Honor for damages, Silber stated he just wanted to be made whole, and just wanted what he missed out on, Silber claimed to not have a frivolous suit for millions of dollars.  And deferred to the Courts Judgment, of what

they think is the best way to make him whole from all he missed.").) The Bankruptcy Court's damages findings are further confirmed by Silber's testimony, which, for example, disputed GMACM's DTI calculations but did not provide alternative calculations to determine whether Silber would have qualified for a FHA HAMP modification. (See July 15, 2016 H'rg Tr. at 47:3–50:7.) Accordingly, the Bankruptcy Court did not err in finding that Appellant failed to establish "damages that are directly and proximately caused by [the] breach of contract" as required by Connecticut law. McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc., 93 Conn. App. 486, 504, 890 A.2d 140, 153 (2006); see also Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 554, 733 A.2d 197, 216 (1999) ("When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.")[3]

IV.   CUTPA Claim

Silber disputes the Bankruptcy Court's finding that GMACM's conduct did not, as a matter of law, violate CUTPA. "Because CUTPA does not require an intent to deceive, even an allegation of innocent misrepresentation can amount to a CUTPA violation." Precision Mech., Inc. v. Empyrean Hosp., No. CV075002281, 2007 WL 3011010, at *6 (Conn. Super. Ct. Sept. 26, 2007) (brackets and quotation marks omitted). There is no doubt that Silber has

---

[3] Silber also argues that the Bankruptcy Court erred in failing to properly consider his allegation that GMACM should have reported mortgagor and property data to FHA or HUD (App. Br. at 7), and that GMACM should have sought a variance from FHA (App Br. at 16). But even if the testimony established that GMACM was required to make these efforts, these arguments fail for the same reason as the main breach-of-contract claim: Silber's inability to demonstrate that he would have qualified for even a non-FHA HAMP loan modification, which is less stringent than a FHA HAMP modification. In short, the evidence did not demonstrate that Silber would have received a different outcome had GMACM made appropriate reports or requested a variance.

demonstrated that GMACM misled both Silber and the Connecticut AAG regarding FHA HAMP modification requirements, despite Silber's seemingly diligent and good-faith pursuit of modifications in an attempt to save his home from foreclosure. In this Court's view, such carelessness towards a mortgagee could reasonably be construed as violating some "established concept of unfairness" as contemplated by CUTPA.

Nevertheless, Silber's CUTPA claim must ultimately be dismissed for the same reasons as his breach of contract claim. CUTPA requires plaintiffs to demonstrate "an[] <u>ascertainable</u> loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b." Conn. Gen. Stat. Ann. § 42-110g(a) (emphasis added). "Although the ascertainable loss requirement does not require a precise dollars and cents figure, it does require a deprivation, detriment [or] injury that is capable of being discovered, observed or established." <u>Larobina v. Wells Fargo Bank, N.A.</u>, No. 3:10-cv-01279 (MPS), 2014 WL 3419534, at *1 (D. Conn. July 10, 2014) (internal quotation marks and citation omitted), <u>aff'd,</u> 632 F. App'x 55 (2d Cir. 2016). Emotional distress, frustration, and the costs of filing and pursuing a lawsuit are not ascertainable losses under CUTPA. <u>See</u> <u>Larobina</u>, 2014 WL 3419534, at *2, *4. Likewise, a demonstration that a plaintiff "lost the benefit of his bargain," absent more, does not satisfy CUTPA's ascertainable loss requirement. <u>See</u> <u>Larobina</u>, 2014 WL 3419534, at *3. Accordingly, given the insufficiency of the evidence concerning Silber's damages, he failed to prove a CUTPA claim.

V.     <u>The Reinstatement Quote</u>

Silber argues that the Bankruptcy Court erred in holding that the Reinstatement Quote was not inaccurate. And his brief does cast doubt on the Reinstatement Quote's accuracy.

For example, Silber contends that although the document provided by GMAC to CHFA identified the $43,736.80 Reinstatement Quote as being the "Total Past Due Less Fees," (Hearing Ex. 17) testimony from Cunningham implies that fees were included in that calculation. (July 15, 2016 Hearing Tr. at 137:14–138:2 (discussing "foreclosure fees and costs" in determining "[t]he total [of] $43,736.80").)  But even if Silber could show that the Bankruptcy Court's finding regarding the Reinstatement Quote was clearly erroneous, he cannot contravene the Bankruptcy Court's legal conclusion that neither the Note nor Deed of Trust were violated by providing an inflated reinstatement quote to a third party.  Accordingly, this Court affirms the Bankruptcy Court's finding that the breach of contract claim could not be premised on GMACM's provision of the Reinstatement Quote to CHFA.

VI.   Negligent Misrepresentation

Silber's negligent misrepresentation claim rests on two purported misstatements: the allegedly false Reinstatement Quote provided to the CHFA, and GMACM's December 2010 email to the AAG stating that unemployment income could not be utilized when reviewing accounts for loan modifications.

There is no dispute that GMACM's statement that revised guidelines somehow precluded calculation of a borrower's unemployment income was false.  Assuming, arguendo, that the Reinstatement Quote was improperly calculated, Connecticut Law is nonetheless clear that negligent misrepresentation claims must be founded on a misrepresentation directed at the plaintiff, and reliance by the plaintiff on that misrepresentation to his detriment.  See Rhodes v. Advance Prop. Mgmt., No. CV135015924, 2014 WL 5355430, at *2 (Conn. Super. Ct. Sept. 17, 2014) (striking a negligent misrepresentation claim where plaintiff did "not allege[] any facts

18

showing that the defendants made a misrepresentation of fact to the plaintiff, nor that [plaintiff] relied on it in some way"); Stuart v. Freiberg, 316 Conn. 809, 826–29, 116 A.3d 1195, 1206–08 (2015) (finding plaintiff's negligent misrepresentation claim "untenable as a matter of law" where "plaintiffs admitted that they never read or reviewed [the] false . . . statements").

The record establishes that Silber did not rely on either of the purported misstatements. With respect to the December 2010 email to the AAG, Silber testified:

> Q: Okay. How, then did you rely, to your detriment, on [GMACM's] purported representation?
> A: Because it quelled the investigation of the Attorney General's Office, who has the power to step in and do something at the time.
> Q: Okay. The –
> A: I'd been aware that unemployment could be used the whole time.
> Q: Okay. But – okay. That's it.

(July 15, 2016 Hr'g Tr. at 83:18–84:1.)  And as for the Reinstatement Quote, the Bankruptcy Court found, among other things, that Silber "hardly establishes that he 'reasonably' relied on the payoff amount in formulating his own calculation of what GMACM would potentially be providing to the CHFA for a reinstatement quote. . . . There is no evidence before this Court establishing that GMACM provided Silber with a reinstatement quote that would be provided to the CHFA in support of his EHLP application; nor is there evidence before the Court establishing that Silber ever asked GMACM to provide him with that figure." Order, 2015 WL 4747710, at *13.  Again, Silber's brief focuses on trying to prove that the Reinstatement Quote was incorrect, and does not undermine the Bankruptcy Court's findings with respect to his lack of reliance. Accordingly, the Bankruptcy Court's finding that Silber did not rely on the representations forming the basis of Appellant's negligent misrepresentation is affirmed.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's August 4, 2015 Order is affirmed. The Clerk of Court is directed to close this case and mail a copy of this Memorandum & Order to Todd Silber, 73 Farnham Road, South Windsor, CT 06074.

Dated: August 2, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.